NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEAUTY PLUS TRADING CO., INC. et al, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> I & I HAIR CORP. : <br> : <br> Defendant. : | Civil Action No. 20-09268 (SRC) <br><br> OPINION |

**CHESLER**, District Judge

      This matter comes before the Court upon Defendant I & I Hair Corporation's motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or in the alternative, to transfer venue. Plaintiffs Beauty Plus Trading Company and Hair Plus Trading Company have opposed the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court will grant Defendant's motion to transfer venue by transferring this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  Insofar as the motion seeks dismissal for lack of personal jurisdiction and improper venue, that portion of the motion will be dismissed without prejudice as moot in light of the transfer.

    **I.**    **BACKGROUND**

      I & I Hair Corporation ("I & I" or "Defendant") is a Texas corporation with its headquarters in Dallas, Texas. On or about December 11, 2018, I & I brought a trademark

1

infringement action in the United States District Court for the Northern District of Texas against Beauty Plus Trading Co. ("Beauty Plus"), a New York corporation with its principal place of business in New Jersey. I & I and Beauty Plus ultimately settled, executing a settlement agreement ("the Settlement Agreement") on or about April 22, 2019. The Settlement Agreement includes a forum-selection clause, which states: "The state or federal courts of Texas located in Dallas county shall be the exclusive forum for litigation concerning this Agreement." (Settlement Agreement, Art. 13). The clause further goes on to state that: "All parties to this Agreement consent to personal jurisdiction in such courts [the state or federal courts of Texas located in Dallas county]." (Settlement Agreement, Art. 13). The Settlement Agreement was then incorporated into a consent judgment and permanent injunction ordered by the Northern District of Texas on June 20, 2019. While the Settlement Agreement was only signed by Beauty Plus and I & I, Section 13 of the consent judgment states:

> If Defendant [Beauty Plus] or any company directly or indirectly related to Chang Moo Lee[, owner of Beauty Plus,] is found by the Court to be in contempt of, or otherwise to have violated this Consent Judgment and Permanent Injunction, the parties agree that Plaintiff [I & I] shall be entitled to all available relief which it may otherwise request from the Court . . . .

(Consent Judgment and Permanent Injunction, I & I Hair Corp. v. Beauty Plus Trading Co., Inc. (No. 3:18-cv-03254-M, N.D. Tex., June 20, 2019). Further, the Consent Judgment also states that the Northern District of Texas is a proper venue under 28 U.S.C. § 1391(b), and that the Texas district court retains jurisdiction over the matter "for the purposes of enforcing the terms of this Consent Judgment and Permanent Injunction." (Consent Judgment and Permanent Injunction, I & I Hair Corp. v. Beauty Plus Trading Co., Inc. (No. 3:18-cv-03254-M, N.D. Tex., June 20, 2019).

After the consent judgment and permanent injunction were entered, I & I filed two successive motions for contempt against Beauty Plus in the Northern District of Texas, alleging that the terms of the Settlement Agreement had been violated. I & I also brought these motions for contempt against Hair Plus Trading Company ("Hair Plus"), a Georgia corporation with its principal place of business in Georgia. I & I supported its decision to include Hair Plus in its motions for contempt by alleging that Hair Plus is related to the owner of Beauty Plus, making the consent judgment applicable against it as well. Ultimately, both motions were denied by the Northern District of Texas based on its conclusion that I & I did not present sufficient evidence to support a finding of contempt. After the second denial by the Texas district court, I & I then sent Beauty Plus a litigation preservation letter dated July 17, 2020, stating that "it is probable that [I & I] will file a lawsuit, in which Beauty Plus and/or Hair Plus will be named as a defendant." (Letter from Papool Chaudhari, Attorney for Defendant, to Beauty Plus (July 17, 2020) (ECF No. 15, Exhibit 12)). Beauty Plus and Hair Plus filed the present action in this Court five days later, on July 22, 2020, seeking a declaratory judgment of non-infringement. Subsequently, on August 17, 2020, I & I filed a related action against both Plaintiffs in the Northern District of Texas, alleging trademark infringement.

## II.   DISCUSSION

Defendant I & I brought this motion, seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or alternatively, requesting that the case be transferred to the Northern District of Texas. Because the Court concludes that transfer to another venue is appropriate under § 1404(a), it will not determine whether New Jersey is a proper venue with personal jurisdiction over Defendant.

Defendant's motion to transfer venue to the Northern District of Texas is primarily based on the forum-selection clause included in the Settlement Agreement entered into by Beauty Plus and I & I, which states that any applicable suits must be brought in either federal or state court in Dallas, Texas. When the Court is faced with a valid forum-selection clause that points to a particular federal district, this clause may be enforced through a motion to transfer venue under 28 U.S.C. § 1404(a). Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W. Dist. Tex. et al, 571 U.S. 49, 52 (2013). That provision provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally, a transfer analysis under § 1404(a) calls for a weighing of private and public factors. Atl. Marine, 571 U.S. at 62-63. In Jumara, the Third Circuit provided a list of factors a district court should normally consider under this test. The private interest factors are:

> [1] [P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995) (internal citations omitted). The public interest factors are:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Atl. Marine, 571 U.S. at 62. Thus, "a valid forum-selection clause [should be] 'given controlling weight in all but the most exceptional cases[,]'" as the "'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" Id. at 63 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Therefore, where the parties have agreed to another proper forum, the full Jumara analysis does not apply, and a district court should not consider arguments about the parties' private interests and the plaintiff's choice of forum.[1] Id. at 63-64. Instead, a district court should only consider the public interest factors, and those factors "will rarely defeat a transfer motion" in this context. Id. at 64.

Here, the forum-selection clause requiring that any disputes under the Settlement Agreement be brought in Texas clearly applies against Beauty Plus, as a signatory to the Settlement Agreement which includes the clause. Beauty Plus has not contested the validity of the forum-selection clause in the Settlement Agreement. Rather, its only argument that the clause is not applicable against it is that this case somehow does not concern the Settlement Agreement, as Plaintiffs allege that "Beauty Plus has met all of its obligations under the Settlement Agreement." (Pls.' Br. Opp'n Def.'s Mot. Dismiss, 15). This argument is inappropriate, in that it assumes a conclusion that is an integral question in this litigation – that is, whether Beauty Plus has adhered to the Settlement Agreement, or, whether it has breached the Settlement Agreement

---

[1] Additionally, unlike a traditional § 1404(a) transfer, a venue transfer predicated on a forum-selection clause "will not carry with it the original venue's choice-of-law rules." Atl. Marine, 571 U.S. at 64.

5

and infringed on Defendant's trademark rights. Plaintiffs' request for a declaratory judgment of non-infringement directly concerns what trademark rights and obligations were initially settled in the Settlement Agreement. Thus, it is apparent that the forum-selection clause has been triggered in this case. As such, under Atlantic Marine, the private factors and Beauty Plus's choice of New Jersey as the forum for its complaint are not relevant in determining whether transfer is proper, and thus will not be considered by the Court.

As for Hair Plus, although it is not a signatory to the Settlement Agreement which contains the forum-selection clause, Defendant has proffered substantial evidence in support of finding that Beauty Plus is in fact bound by the forum-selection clause. The Settlement Agreement with the forum-selection clause and the consent judgment ordered by the Texas district court are intimately intertwined. In the consent judgment, the court decreed that:

> If Defendant [Beauty Plus] *or any company directly or indirectly related to Chang Moo Lee*[, owner of Beauty Plus,] is found by the Court to be in contempt of, or otherwise to have violated this Consent Judgment and Permanent Injunction, the parties agree that Plaintiff [I & I] shall be entitled to all available relief which it may otherwise request from the Court . . . .

(Consent Judgment and Permanent Injunction, I & I Hair Corp. v. Beauty Plus Trading Co., Inc. (No. 3:18-cv-03254-M, N.D. Tex., June 20, 2019, emphasis added). While Hair Plus summarily argues in a footnote in its opposition to Defendant's motion that it is not a company related to Chang Moo Lee, this response is merely conclusory. Hair Plus's response fails to address Defendant's allegations that Hair Plus is in fact owned by Chang Moo Lee's sibling, and that Chang Moo Lee's wife is a Hair Plus shareholder. However, even if the forum-selection clause does not apply against Hair Plus, on balance, the private factors listed in Jumara still support the conclusion that Hair Plus's case should be transferred to the Northern District of Texas.

6

In applying the private factors to Hair Plus's case, undoubtedly Hair Plus and I & I have split preferences as to where the case should be maintained. However, the rest of the private factors either lean in favor of transferring the case to the Northern District of Texas or are neutral. The third private factor, which focuses on where the claim arose, supports a finding that Texas is a more appropriate forum, as this suit arises under Defendant's original infringement claim against Beauty Plus, which was brought, and ultimately settled, in the Northern District of Texas.[2] Then, while presumably Texas will not be the most convenient forum for Hair Plus, as Hair Plus is a citizen of Georgia, Texas should be considered the most convenient forum for both Defendant and Beauty Plus. Defendant clearly considers Texas to be a convenient forum, and because the forum-selection clause in the Settlement Agreement certainly applies against Beauty Plus, the Court will presume that Texas is a convenient forum for Beauty Plus. See Atl. Marine, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). Thus, any potential inconvenience that Texas may pose to Hair Plus is outweighed by the fact that it is the most convenient forum for all other parties. Further, Hair Plus has not alleged that Texas is inconvenient in the sense that its witnesses may be unavailable for trial in Texas. Rather, the fact that the previous litigation took place in Texas indicates that, on the contrary, Texas will be the most convenient forum for many relevant witnesses. Hair Plus also has not indicated in any respect that files and necessary records cannot be produced in Texas.

---

[2] Plaintiffs argue that the claim, in fact, arose in New Jersey, as that is where the inventory of the alleged infringing products is held. It is not necessary to go into a detailed analysis as to whether the Court should view the location of where the claim arose under this factor as where the alleged infringing products are held, or where the litigation and subsequent settlement regarding the parties' respective trademark rights and obligations took place, as regardless of that determination, the factors lean in favor of transferring to another venue.

The public interest factors listed in Jumara likewise lean in favor of transferring the case to the Texas district court. The only fact that Plaintiffs have alleged in support of finding that New Jersey is a more convenient forum is that one of the plaintiffs, Beauty Plus, is a citizen of New Jersey. While Beauty Plus's status as a New Jersey citizen does, to some extent, implicate New Jersey's interest in acting as the forum for the case, this alone is not enough to warrant keeping the case in New Jersey. Rather, Texas has a much stronger connection to the litigation. The initial suit brought by Defendant against Beauty Plus over two years ago was litigated entirely in the Northern District of Texas and culminated in the Settlement Agreement that was incorporated into a consent judgment and permanent injunction ordered by the Northern District of Texas. Since then, the Texas district court has had additional involvement with the case, as it subsequently heard Defendant's two motions attempting to hold Plaintiffs in contempt.

Beyond Texas's previous involvement with the case, relevant practical considerations, another key public interest factor listed under Jumara, strongly support transferring the case to another venue. In addition to arguing that Texas is a more appropriate venue for this litigation, Defendant has argued that it is not subject to in personam jurisdiction in New Jersey and that New Jersey is an improper venue. The Third Circuit has held that where there is a bona fide dispute over the existence of in personam jurisdiction and a more convenient forum exists, the court need not determine whether in personam jurisdiction exists over the defendant in the initial forum. Schwilm v. Holbrook, 661 F.2d 12, 15-16 (3d Cir. 1981). Rather, the interests of justice are furthered by transfer of the action pursuant to 28 U.S.C. § 1404(a) to the other proper venue in which personal jurisdiction clearly exists. Id.

Here, the Court's determination that this matter should be transferred to another venue obviates any questions regarding personal jurisdiction and venue in New Jersey. Nevertheless,

the uncertainty as to whether New Jersey has personal jurisdiction over Defendant is significant to the extent that it influences the decision whether to transfer to another venue. Plaintiffs' allegations in support of finding personal jurisdiction over Defendant are undoubtedly weak. Defendant, as a corporation both organized and headquartered in Texas, is not a citizen of New Jersey. Defendant's contacts with New Jersey are also minimal. Defendant has no facilities or employees in New Jersey, and its only contact with the state is through its sales to vendors in New Jersey. Additionally, according to Defendant's Brief in support of its motion, those sales to New Jersey vendors only comprised 0.28% of Defendant's total sales in the first half of 2020. Plaintiffs do not contest these facts and merely attempt to form a basis for personal jurisdiction over Defendant by pointing to letters sent to Beauty Plus in New Jersey, including the litigation preservation letter, Defendant's 24 New Jersey vendors, and the fact that a licensing agreement between the parties that pre-dates the relevant dispute was negotiated and signed in New Jersey. These facts are most likely insufficient to support a finding of either general or specific jurisdiction over Defendant in New Jersey.

In contrast, no parties dispute that personal jurisdiction could be established over all parties in Texas. Indeed, Defendant, by bringing this motion to transfer venue pursuant to § 1404(a), contends that the Northern District of Texas would be an appropriate forum in which to litigate this action and therefore necessarily concedes that it would be subject to in personam jurisdiction there. Further, Plaintiffs, in their opposition to transfer, do not oppose on the basis that personal jurisdiction over any of the parties would be lacking in the Northern District of Texas. Indeed, the Settlement Agreement states that all parties to the agreement consent to personal jurisdiction in Texas, and the Northern District of Texas also stated in its consent judgment that it was retaining jurisdiction over manners concerning the consent judgment and

permanent injunction. Thus, because New Jersey's ability to assert personal jurisdiction over Defendant is questionable, at best, and, on the other hand, personal jurisdiction can clearly be found in Texas, transferring the case to the Texas district court would be appropriate. Doing so will prevent the waste of needless time, effort, and resources, by obviating the need for the parties to litigate whether personal jurisdiction exists over Defendant.[3] As well, it is clear that the forum-selection clause requires that Beauty Plus's claim be heard in Texas. Accordingly, if the Court were to split up the Plaintiffs' claims by allowing Hair Plus to pursue its claim in New Jersey, but transferring Beauty Plus's suit to Texas, this would cause a waste of additional resources and unnecessary duplicative efforts. Instead, transferring both Plaintiffs' claims to Texas would create the most efficient result. A decision by the Texas district court would also be fully enforceable, as it is a proper forum with jurisdiction over the case. In addition, Plaintiffs have not presented any evidence that there would be administrative issues with litigating the case in the Northern District of Texas. Finally, being that federal question jurisdiction applies in this case, there is no concern that the district judge in Texas will not be familiar with the applicable law.

The Court also notes that transferring the case to the Northern District of Texas will not pose any administrative issues with litigating the case in that district, and in fact, will further promote efficiency, as a related suit regarding this trademark infringement claim is already pending in the Northern District of Texas. Generally, where two related suits are pending in different courts with concurrent jurisdiction, trial judges are meant to defer to the court where the case was first filed. <u>EEOC v. Univ. of Pa.</u>, 850 F.2d 969, 971 (3d Cir. 1988). While the first-to-

---

[3] Additionally, being that Defendant has contested whether New Jersey is a proper venue for this case, transferring the case to a proper venue, the Northern District of Texas, will also avoid the unnecessary litigation of potential venue questions in this district.

10

file rules give a court the power to favor an earlier proceeding over a subsequent filing, "[t]hat authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion . . . given appropriate circumstances justifying departure from the first-filed rule." Id. at 972. For example, in EEOC v. Univ. of Pa., the Third Circuit held that the district court did not abuse its discretion by declining to invoke the first-filed rule when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, potentially less favorable, forum. Id. Here too, the facts present a situation where the Court need not blindly adhere to the first-to-file rule. While Plaintiffs suit in this forum was filed approximately three weeks before Defendant filed the related suit in the Northern District of Texas, Plaintiffs' actions appear to have been motivated by forum shopping. Plaintiffs were aware that Defendant was planning to imminently file suit in another forum. Indeed, Beauty Plus received a litigation preservation letter from Defendant's Texas-based counsel, stating that "it is probable that [I & I] will file a lawsuit, in which Beauty Plus and/or Hair Plus will be named as a defendant" and just five days later, Plaintiffs filed suit in this Court. (Letter from Papool Chaudhari, Attorney for Defendant, to Beauty Plus (July 17, 2020) (ECF No. 15, Exhibit 12)). Plaintiffs were clearly motivated by their desire to avoid what, in their view, is a less favorable forum, as litigating the case in Beauty Plus's home state would be preferable to Plaintiffs. As such, the Court need not and will not apply the first-to-file rule and will instead transfer this case to the Northern District of Texas.

Therefore, based on the relevant forum-selection clause and the Jumara factors, this Court concludes, in its discretion, that a transfer of this action to the Northern District of Texas would

promote the convenience of the parties and serve the interests of justice. Thus, Defendant has demonstrated that a transfer pursuant to 28 U.S.C. § 1404(a) is warranted.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion insofar as it seeks to transfer venue. Pursuant to 28 U.S.C. § 1404(a), and in the interests of justice, venue of this action will be transferred to the United States District Court for the Northern District of Texas. An appropriate Order with be filed together with this Opinion.

  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: October 21, 2020